UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NICOLE MULDOON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. CV 13-5188-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Nicole Muldoon ("Plaintiff") appeals from the decision of the Administrative Law Judge ("ALJ") denying her application for Social Security Disability Insurance benefits. Because the ALJ did not provide legitimate clear and convincing reasons for discrediting Plaintiff's subjective complaints, the ALJ's decision is reversed and the matter is remanded for further proceedings.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed her application for benefits on June 25, 2010, alleging disability beginning August 27, 2009. Administrative Record ("AR") 18. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (with canal stenosis) and degenerative joint disease of the

lumbosacral spine; chronic active ulcerative colitis (status post colectomy and end ileostomy on May 9, 2010) and laparotomy with adhesiolysis, small bowel resection, salpingo-oophorectomy and proctoscopy on August 25, 2010; obesity; anxiety disorder; and depressive disorder. AR 20. The ALJ found that notwithstanding these impairments, Plaintiff retained the residual functional capacity to perform sedentary work with certain additional limitations, most notably that she be limited to simple tasks with no public contact. AR 23. The ALJ found that Plaintiff's limitations left her unable to perform her past relevant work. AR 29. Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff remained capable of performing work available in significant numbers in the national and regional economy. AR 30. On that basis, the ALJ concluded that Plaintiff was not disabled. Id.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred in: (1) failing to give proper weight to the opinions of Plaintiff's treating physicians; (2) assessing Plaintiff's credibility; and (3) finding that Plaintiff could perform other work at step five of the sequential evaluation because the number of jobs identified by the VE was low. See Joint Stipulation ("JS") at 4.

## III.
## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion.

Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is "more than a mere scintilla, but less than a preponderance." Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.
## DISCUSSION

### A.  The ALJ Did Not Offer Clear and Convincing Reasons for Discrediting Plaintiff's Credibility

Plaintiff contends that the ALJ erred in determining that Plaintiff was not fully credible. JS at 14-20. Plaintiff testified to the following subjective symptoms and limitations: she had sharp back pain due to a strained lumbar; she had complications from her colon removal surgery, which included post-surgery pelvic pain, increased difficulty walking, bending, and lifting, and the need to empty her ileostomy bag at least 10 to 12 times per day; and, as a result of her physical impairments, she was being treated for depression and anxiety. See AR 56-81.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2008) (citing Lingenfelter, 504 F.3d at 1035-36). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the alleged pain or other symptoms."

Lingenfelter, 504 F.3d at 1036. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). To the extent that an individual's claims of functional limitations and restrictions due to alleged pain are reasonably consistent with the objective medical evidence and other evidence, the claimant's allegations will be credited. SSR 96-7p, 1996 WL 374186 at *2 (explaining 20 C.F.R. § 404.1529(c)(4)).

If the claimant meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting a claimant's complaints. Robbins, 466 F.3d at 883. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ must consider a claimant's work record, observations of medical providers, and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities. Smolen, 80 F.3d 1273, 1284 & n.8 (9th Cir. 1996). The ALJ may also consider an unexplained failure to seek treatment or follow a prescribed course of treatment and employ other ordinary techniques of credibility evaluation. Id. at 1284.

One of the primary reasons the ALJ found Plaintiff not fully credible involved her failure to lose weight when advised by her doctor to do so. AR 25-26. The ALJ recounted the fact that Plaintiff's doctor advised her that she must lose weight before her ileostomy could be reversed and then reviewed her failed efforts to lose weight. AR 25. The ALJ then concluded, "[t]o the extent that the claimant relies on the presence of the ileostomy as preventing work, I

question her failure to persist with weight reduction to allow for surgical revision." AR 25-26. After expressly stating that he was not denying Plaintiff's disability claim for non-compliance, the ALJ continued to criticize Plaintiff for failing to lose weight: "She could have taken action likely to cure or relieve the alleged symptoms but did not do so. Consequently, the poor compliance with treatment suggests that her symptoms are not as disabling as alleged and further supports the residual functional capacity given above." AR 26.

Although, as noted above, failure to follow prescribed treatment is generally a proper basis for an adverse credibility determination, the Ninth Circuit has held that an obese claimant's failure to follow her doctor's recommendation to lose weight, as opposed to her failure to follow "prescribed treatment," may not be used to support an adverse credibility determination. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("[T]he failure to follow treatment for obesity tells us little or nothing about a claimant's credibility."). Recognizing that treatment for obesity "is often unsuccessful," the Commissioner's policy guidelines and Ninth Circuit law limit an ALJ's ability to use a claimant's failure to lose weight as a ground for denying benefits or making an adverse credibility finding. See SSR 02-1p, 2002 WL 34686281, at *9 (stating that the Commissioner "will rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits"); Orn, 495 F.3d at 636-638 (holding that ALJ "ignored" SSR 02-1p and "misapplied" Ninth Circuit law in using claimant's failure to lose weight as a reason for rejecting subjective testimony). "Before failure to follow prescribed treatment for obesity can become an issue in a case," the Commissioner "must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s)." SSR 02-01p, 2002 WL 34686281, at *8 (emphasis added).
///

Even if a finding of disability is made based in whole or in part on a claimant's obesity, the Commissioner will find that a claimant has failed to follow prescribed treatment for obesity, and therefore is not eligible to receive benefits, only if all of the following criteria are met: (1) "a treating source has prescribed treatment for obesity," (2) the "treatment is clearly expected to restore the ability to engage in [substantial gainful activity]," (3) "the individual is not following the prescribed treatment," and (4) the individual does not have "a good reason for" not following the prescribed treatment. SSR 02-1p, 2002 WL 34686281, at *9; see 20 C.F.R. § 404.1530 (regulations regarding the need to follow prescribed treatment).

The ALJ did not find Plaintiff disabled. Therefore, it was error for the ALJ to take into account Plaintiff's failure to follow medical advice to lose weight in denying benefits. See Orn, 495 F.3d at 636 (holding that the ALJ committed reversible error in finding that the plaintiff's failure to lose weight detracted from his credibility and supported a finding of nondisability because SSR 02–01p "preclude[d] the ALJ from considering the effect of any failure to follow treatment for obesity" unless the claimant was found disabled). Although the ALJ stated that he was not denying the claim based on non-compliance, the ALJ's opinion makes clear that he was relying heavily upon Plaintiff's failure to lose weight as a reason for discrediting her testimony generally, and specifically her testimony about her ileostomy bag. See AR 25-26.

The ALJ also relied upon Plaintiff's activities of daily living in finding her not fully credible as follows:

> As noted above . . . the claimant stated that she was able to tend to her personal care needs, prepare her own meals, and do laundry with some help. She also tries to take care of her mother, who has Parkinson's disease, socializes, and attends church. In addition,

       she continues to be able to drive, handle money, and go places without the need for reminders. In short, the claimant's activities tend to show that she does have the ability to perform basic work activities. When, as here, the claimant is able to spend a substantial part of the day in activities involving the performance of functions readily transferable to competitive work, I am entitled to give less weight to allegations of disabling impairment.

AR 27.

       With respect to daily activities, the Ninth Circuit has held that if a claimant "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 1999). However, the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).

       The ALJ's finding is not supported by substantial evidence. Although Plaintiff did state that she could do "some laundry with some help" and "very little cleaning," she also stated that she could not do household repairs, ironing, or mowing. AR 208. While she stated that she could prepare her own meals, she also described her meal preparation as limited. Id. She indicated that she helped take care of her mother by "get[ting] her a glass of water or a frozen dinner." AR 206. At the hearing, she indicated that she would get pills for her mother and help prepare her Meals on Wheels, but that after such efforts she would lie down for 45 minutes to an hour with a heating pad on her back. AR 77. Although she testified that she can drive, she stated that she had only driven herself three times in the last three months due to her pain. AR

209. The remaining uncontroverted evidence – that Plaintiff could attend church once a week, socialize, and handle money – is insufficient to support a finding that her daily activities discredit her allegations. Contrary to the ALJ's finding, the overall picture painted by Plaintiff's statements and her testimony is not of someone whose daily activities involve the performance of functions readily transferable to the workplace, and thus Plaintiff's daily activities do not constitute a clear and convincing reason for discounting her credibility.

Finally, the ALJ also rejected Plaintiff's testimony about the frequency with which she needed to empty her ileostomy bag:

> I do not accept the claimant's testimony that she needs to empty the ileostomy bag as soon as it contains any excretion and that she is uncomfortable using public restrooms to empty the bag. There is no medical evidence that the bag must be emptied with such frequency, and I cannot accept general discomfort with public restrooms as precluding work. Moreover, the presence of the bag does not preclude the claimant from going to restaurants. If the bag caused this level of maintenance and discomfort, I would anticipate that she would have lost the amount of weight necessary to permit reanastosmosis.

AR 26 (citations omitted).

At a minimum, the Court is skeptical of the ALJ's handling of Plaintiff's testimony regarding her ileostomy bag. Plaintiff testified that she wants to empty her ileostomy bag as soon as it contains any content and that she is uncomfortable emptying her bag in public restrooms due to concerns about privacy and cleanliness. AR 83-85. To the extent the ALJ is suggesting that Plaintiff is being untruthful about those concerns, the Court finds nothing in the record to support such a finding. As the Ninth Circuit has said in a different context, "[s]heer disbelief is no substitute for substantial evidence."

1  Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (holding that ALJ erred
2  in "relying on his disbelief of Benecke's symptom testimony"). Moreover, it
3  appears that the ALJ's conclusion is militated at least in part by his conclusion
4  that Plaintiff would have lost weight given her discomfort with the ileostomy
5  bag, a conclusion that is at best tenuous and at worst legal error for the reasons
6  described above.

      At the same time, the Court does not accept the premise that a claimant's subjective discomfort with emptying the bag in a public restroom or preference for emptying the bag more often than necessary serves as a functional limitation. On remand, the Court's concerns about the ALJ's credibility findings with respect to the ileostomy bag should not be read to rule out the possibility that the ALJ may find that Plaintiff's subjective preferences are not a basis for a functional limitation.

      In sum, the Court concludes that ALJ erred in relying on Plaintiff's failure to lose weight as a basis for discounting her credibility. The Court also concludes that the ALJ's finding that Plaintiff's daily activities are sufficient to discredit her subjective testimony is not supported by substantial evidence. Taken together, these two conclusions preclude this Court from finding that the ALJ had specific, clear and convincing reasons for discounting Plaintiff's credibility. Additionally, the Court has reservations about the ALJ's assessment of Plaintiff's testimony about her ileostomy bag. The Court cannot conclude that the above errors were harmless because it cannot "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

///
///
///

**B.     A Remand for Further Proceedings Is Appropriate**

The Court has discretion as to whether to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); see also Lingenfelter, 504 F.3d at 1041.

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). Here, there are outstanding issues that must be resolved before a final determination can be made. The ALJ's failure to properly assess Plaintiff's credibility may have affected the ALJ's residual functional capacity assessment and the finding at step five of the sequential evaluation process that Plaintiff was able to perform other work in the regional and national economy. See, e.g., Ghanim v. Colvin, --- F.3d ---, 2014 WL 4056530, at *10 (9th Cir. 2014) (remanding for further proceedings where ALJ's errors, including improper credibility assessment, may have "infected the ALJ's residual functional capacity assessment" and step four determination).[1]

///

///

---

[1] The Court has not adjudicated Plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a remand for immediate payment of benefits would not be appropriate. On remand, however, the ALJ may consider Plaintiff's other claims of error.

# V.
# CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this opinion.

Dated: September 12, 2014

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge